I'll call the second case of the day, U.S. v. Cary, 14-1961. Whenever you're ready, Mr. Taylor. Thank you. Thank you, Your Honors. May it please the Court, Counsel? My name is Luke Taylor. I represent the appellate, Jeremy Cary. And keep your voice up, please. Yes, ma'am. This case involves special conditions and supervised release. Mr. Cary was convicted of a SORNA violation in 2011. His underlying sex crime was a conviction in Knox County in 2009 for aggravated criminal sexual abuse, and that he had sexual contact with someone between the ages of 13 and 17. In the case before the district court, he was sentenced initially to 33 months. Ultimately, that was reduced to 24 months. After he was released from custody, a petition to revoke his supervised release was filed based upon two violations. One, that he failed to participate in sex offender treatment, and two, he used a computer without monitoring software installed. Both of those conditions were obviously conditions of supervised release. We are challenging five of those conditions that, upon his resentencing, upon the revocation, the district court imposed. Two of those conditions, we are suggesting that this court remand those conditions for essentially Siegel analysis from the district court. The first condition was that my client refrain from any use of alcohol, and also that he refrain from any controlled substance or mood-altering substance. Well, he was diagnosed as alcohol-dependent and said he would drink every day to escape the reality that he was a sex offender, so why doesn't that justify the complete ban on alcohol? I think it does, Judge. I think our suggestion and argument here was either, one, I misread the record on that particular issue, or possibly and more likely, two, the district court just simply didn't discuss that in his findings of fact and his determination upon sentencing. That really doesn't go to the heart of my client's disagreement with the district court, so we're agreeable with the government on that particular issue. So then you'll concede on that because it was only in the written judgment, right? He never said it orally. That's correct, Your Honor. But you're willing to concede on that? We're conceding the alcohol, Judge, and any illegal controlled substances. We would stand on the mood-altering substances, Judge, just for the very same reasons that this court has indicated previously, that can be read overly broad and include tea, coffee, blueberries, things of that nature. With us conceding that, I believe there's a similar concession by the government as to the mood-altering issue. I'll move on from that. The second one we're asking for remand, and this may not be much of an issue either, is special condition number five, requiring that my client not receive, transmit, have under your control or view any illegal material that contains pornography in electronic paper or any other form. Even though I was fairly confident, based upon a reading of the district court's decision, that the district court kind of changed the suggested condition there and specified illegal material. If there is, if this condition does touch on his ability to have access to legal pornography, then we still wish for this matter to be remanded and addressed. Was the site, the type of sites to be monitored specifically spelled out by the court? No, Judge. I think on that issue, kind of, I would suggest that falls under the computer and Internet monitoring program, which is under special condition number six, which we're asking the court to vacate. I'm just trying to get clear what you're doing the concessions on and what you're not. So on six, the computer monitoring, you had challenged that, and I thought one of the issues was clarifying what the site was that was to be monitored. Absolutely, Your Honor. Actually, they are very much connected. Our position as to special condition number five is if five is read simply that he cannot have any control, view any illegal pornography, obscenity, anything illegal, my client's fine with that. Obviously, the court has no legal obligation because that's a crime in and of itself. If, however, five speaks to keeping him from being able to view legal pornography, we are arguing that and we are not conceding that. But the judge corrected himself on that. I believe he did. And so that seems to take care of that objection if the correction is taken at face value. But that's a separate issue from the computer monitoring and what the filter applies to, right? That's a different challenge that you're making. Yes, Your Honor. Getting to that, as far as the computer and Internet monitoring program, we have several issues. One is it's to monitor block access to sexually oriented websites. Our suggestion is that's unconstitutionally vague and overbroad, and we believe that United States v. Atkins pretty much addresses that right on point. They had a very similar condition in that case. It was special condition number five. And also Atkins addressed the fact that adult pornography enjoys First Amendment protections. And I don't think it was that case, but one of the other recent cases suggests that adult pornography can be a legal outlet for some sexual tensions as opposed to a fuel for misbehavior. Our secondary argument with special condition number six is that it's not necessary in this situation. There's really no basis. There's no character or history of my client or suggestion that his use of an unmonitored and unfiltered computer is going to make it more likely that he's going to commit a crime. Well, was there some evidence that he contacted a 17-year-old through a website? Yes, Your Honor. It was, I think, on Meet Me, I believe, website. There was, but the evidence there was fairly straightforward and simple, and I would still suggest not very damning towards my client at all. There was some communication between the two. There was nothing sexual overtly about that. Well, he sent a photo of himself shirtless with his hand on his crotch to a 17-year-old girl. Are we talking about the same thing? I think we're talking about the same thing. I think that was done. That was when he was in the halfway house. Yes, Your Honor. I think that was done by telephone, if my recollection is correct. And I think it's worth noting that 17-year-old in the state of Illinois still falls within the age of consent. Throughout the appellee's brief and even in the district court's ruling, there's this suggestion that that was a horrible instance of grooming a 17-year-old girl. And I'd suggest that that's a real stretch of the imagination to call it that. The probation officer testified that he had never spoken anything sexual with the girl. He had never tried to meet her. There was no hands-on or even attempt in that regard. We might find it distasteful that a man in his late 20s would reach out to a 17-year-old, but not to this point. But as you pointed out, the age of consent in Illinois is 17, not 18. Yes, Your Honor. Obviously, I suspect the toughest one here is our suggestion that the court erred when he required my client to participate in sex offender treatment program. I'd just briefly suggest that the appellate court cases that are in play here primarily are Goodwin, Evans, and Baker. And I think Evans still essentially sets out the analysis there, some temporal proximity, some prominence of sexual misbehavior by a defendant. We'd still probably suggest that based on 5D1.3, Evans should be read fairly narrowly, however it is what it is at this point. So I would suggest the court could look at Goodwin on one end of the spectrum and Baker on the other. Baker, of course, involved an individual who committed several rapes in the early 80s, sentenced to eight years, I believe. Three months after his release, he committed even more heinous sexual crimes, got himself sentenced to 20-some years. Then he was released. The court will probably recall it as the Sborro. He worked at a Sborro pizza place, had contact with 14-year-old girls, brought them back into an uninhabited spot back in his place of employment, discussed having sex with them, and then communicated with at least one of them by phone later. That's actually the Baker case, and the court found that sex offender treatment was properly ordered. At the other end of the spectrum, we have Goodwin. Goodwin, I think he was 20-plus years ago sentenced for attempted lewd and lascivious behavior in front of a child. He was sentenced to three months of supervision, essentially, and then his SORNA violation, of course, brought him before the court. And in Goodwin, of course, the court said, no, there's not a significant, sufficient connection there. In Mr. Carey's case, it was 2009, committed the offense. It was a status offense. It was a felony, of course, but there was nothing forcible about it. It was simply the age difference there, which, of course, is a serious offense, but among the spectrum. And then when we throw in, Your Honors, this, what innocuous is not the correct word, but certainly not overly telling communication with a 17-year-old, I'd suggest that it were much closer to a Goodwin-type situation than a Baker-type situation. And then as to special conditions number nine, that he participate in psychiatric services and or a program of mental health counseling treatment as directed by the U.S. probation officer and take any prescribed medications as directed by the treatment providers, there was not an analog condition in his original sentence. So that was something new that the court imposed upon him upon the revocation. And while it is true that the record does reflect that he did have some diagnoses for some mental conditions, the district court never fleshed that out a bit. He simply inquired about some medications and his willingness to take those. And even though it cuts both ways here, if he is going to be participating in sex offender treatment, presumably he would have some of that same treatment there. Also, the duplicative nature of psychiatric services and or a program of mental health counseling seems unnecessary. And, of course, we've challenged each and every place under the special conditions where the court has used the phrase, essentially, you shall pay for these services as directed by the probation officer. One place under special condition number three, it does state you shall pay for such services if financially able as directed by the U.S. probation officer. Maybe that was the intent of the district court, but we'd ask that it be remanded and it be specified. Thank you. All right, thank you. Mr. Baum? Baum. May it please the court, Jason Baum on behalf of the United States. As this court found in Siegel, a main purpose of supervised release is to prevent recidivism. Judge McDade was confronted with a convicted sex offender who was an alcoholic with diagnosed mental health disorders, who he found to be grooming a new victim while on supervised release, and that victim he met online through this meetme.com. We believe that all of the challenge conditions in this case were reasonably related to preventing him from reoffending in the future. Now these various treatments, you concede that the judge forgot to put in the clause of financially able. Yes, we believe that can be fixed with a simple direction on remand, which I don't believe even Judge McDade would not want. He included it in one. I think it was just omitted on the others. I don't think that was any intention for him to punish an indigent defendant if he was unable to. I think that can be fixed. I also think, going to the question of which sites specifically should be blocked under the Computer Internet Monitoring Program, I think all of his computer activity can be monitored. I think only illegal child pornography sites need to be blocked in this case, but I think it is worth monitoring a defendant, a sex offender, who the probation officer testified was committing some alarming activity that would suggest that he was progressing towards reoffending. So I think that can be fixed as well, very simply. And then he's conceded that he says no problem with the ban on alcohol, but he wants to challenge this mood-altering substance. What's your view on that? We agree with that. I believe we put in our brief that we would agree to remove that from the condition as well. That has been removed in many instances since this court has decided the various supervised release cases. Of course, this case was before Judge McDade, before many of those cases were issued by the Seventh Circuit. With the concessions on both sides here, it seems like the main points of contention that remain are over sex offender treatment and mental health treatment. Correct. I do think there was one other. He didn't mention in his oral argument about the no contact with a minor under 18. That is in their brief at page 15. We believe that's appropriate given the grooming activity that was going on, but that might not be an issue either. What about on that? When you look at the age of consent in Illinois, 17, the conditions say 18. Is that something that could also be fixed to 17, or are you sticking with the 18? Your Honor, we believe that it could be 17. I believe in this case it was a 17-year-old girl. I think she was living at home. The danger is similar. I know the age is that. I think it would be worth still a probation officer being able to prohibit girls under the age of 18 from having unsupervised contact with this individual. Going to your question, Judge Sykes, on the mental health first, he asked for that. He asked Judge McDade. He said, I can't get my medication once I'm out. I'd like to get it. So Judge McDade ordered the mental health, including taking all prescribed medication. It seems to me he's now waived any argument to say, hold on, you can't give me what I've asked for. He asked for it. There's clearly no dispute he's diagnosed with anxiety, depression, bipolar, adjustment disorder. I certainly believe that is reasonably related to helping this individual not reoffend. With the sex offender treatment, we believe, first off, his conviction was only in 2009, not decades before. And then given both his continuing, he blamed the victim of that crime as being the town whore. He was grooming this new 17-year-old while on supervised release. And I think it's also telling that he was arrested for the SORNA violation in the middle of the night while crouching outside of a sorority in Florida. Yeah, that's obviously a warning sign. The use of the term grooming in the context of a young woman within the age of consent is a little odd. We use that for those who are actually below the age of consent. That's true. I think it is. He met her on meetme.com, which targets young individuals, and I think Judge McDade was troubled by the fact of, yes, these weren't explicit photographs sent to this girl, but sex offenders usually do not start out with the explicit. They take shirtless photos of themselves, and they're touching their crotch. It's a progressive thing, and I think that's what Judge McDade was troubled by. He's fairly soon on supervised release when this occurs, and there's already multiple warning signs. He said he escapes the reality that he's a sex offender. I think sex offender treatment would be warranted to help him come to that reality. Certainly Judge McDade thought so, thought that he was still in denial about his proclivities and getting to the bottom of those proclivities, so we think the sex offender treatment would still be good. Does he have a diagnosis of pedophilia? I haven't seen anything in the record, Your Honor, that there's a diagnosis of it. Certainly there's a lot of evidence of troubling behavior, but I haven't seen anything that diagnoses it quite like his mental health issues have been diagnosed and are in the record. And in terms of the participation in the sex offender treatment program, aren't mental health issues included in that? They are. Or treatment for various mental health issues that might not be sex related. That's correct. There is some redundancy in the two of those. I don't think the redundancy of it, however, makes one of the conditions not reasonably related. There might be different aspects of the two, so I think even though they may in large part be redundant, I don't think that disqualifies either of the conditions. I believe I've covered everything in the briefs. If there are any other questions for the panel, I'm happy to answer those. Otherwise, I will stand on our brief. All right. Thank you, Mr. Baum. Thank you. Mr. Taylor. One minute, Mr. Taylor. Well, as counsel pointed out, that the probation officer made some testimony regarding alarming activity headed towards, once again, grooming. And I think it was based upon essentially that testimony that Judge McDade, when he decided all this, quite a bit of his rationale was steeped in presumptions and assumptions. On appendix page 50, line 25, and then supplemental appendix 51, lines 1 through 2, Judge McDade stated, it's my understanding that this girl was greatly overweight. I suspect she wasn't a very popular girl with the boys, and she probably had low self-esteem because she wasn't viewed as being attractive. So much has been made of whatever contact my client had. None of it was illegal at that time. None of it is pedophilic in nature, which I believe would be prepubescent females by definition, and then we have the legal issue here of 17. Thank you very much. Thank you. We'll take the case under advisement.